UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Charles B. Patterson, | ) | |
| | ) | C/A No.: 4:14-cv-0041-DCN-TER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN,[1] ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. RELEVANT BACKGROUND

### A. Procedural History

Plaintiff filed an application for DIB on September 22, 2010, alleging inability to work since May 27, 2010. His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on June 26, 2012, at which time the Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on August 24, 2012 finding that Plaintiff was not disabled within the meaning of the Act. (Tr.25-35). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council

_____

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

denied on November 21, 2013, making the ALJ's decision the Commissioner's final decision. (Tr. 5-10). Plaintiff filed this action on January 6, 2014, in the United States District Court for the District of South Carolina.

**B.    Plaintiff's Background and Medical History**

**1.    Introductory Facts**

Plaintiff was born on May 12, 1958, and was 52 years old at the time of the alleged onset. (Tr. 33). Plaintiff has at least a high school and past relevant work experience as a nursing assistant. (Id.).  Plaintiff indicates that he alleges disability due to chronic pain he experiences in his right elbow due to a fall he sustained in May 2012, injuring his right arm. (Pl. Br. 2).

**2.    Medical Records and Opinions**

The day after an accidental fall in May 2010, Plaintiff received emergency medical treatment for radiating arm pain (Tr. 179-85). Other than the presence of pain in his right arm, physical examination revealed normal results (Tr. 180). He was diagnosed with a closed fracture of the right elbow and his arm was placed in a splint (Tr. 180-81). He was discharged with pain medication and advised to return to work with restrictions (Tr. 181).

Orthopedic surgeon W. Bruce Richmond, M.D., examined Plaintiff in June 2010. He observed moderate swelling and tenderness about Plaintiff's right elbow, limited motion, normal sensation, and good distal radial pulse (Tr. 198). Dr. Richmond diagnosed a closed right elbow dislocation, prescribed a hinged-elbow brace, and opined that Plaintiff would be unable to return to his job duties as a nursing assistant for at least two months (Tr. 199). On June 15, 2010, Dr. Richmond diagnosed a stable right elbow dislocation and opined that Plaintiff's condition was improving (Tr. 197). He observed much less tenderness to palpation and increased range of motion

2

with full pronation and supination, and opined that Plaintiff was neurovascularly intact distally (Tr. 197). At the end of June, Dr. Richmond observed that the right elbow has only 90 degrees of active as well as passive flexion.  Treatment notes indicate that [a]ctively Plaintiff has about 20 degree extension lag.  I can with some coaxing get him to full extension." Dr. Richmond noted no tenderness to palpation of the elbow and full pronation and supination.  (Tr. 196). He diagnosed improved right elbow dislocation (improved) and ankylosis of the right elbow (Tr. 196). He recommended that Plaintiff discontinue using the brace and avoid heavy lifting, pushing, or pulling with his upper right extremity (Tr. 196). He also made a referral for Plaintiff to attend physical therapy (Tr. 196).

In July 2010, Dr. Richmond noted that Plaintiff was not in significant pain, but he continued to have limited range of motion in his right elbow (Tr. 195). He reviewed CT scan results and noted the presence of multiple non-displaced fractures and avulsion fracture fragments, but no loose bodies in Plaintiff's right elbow (Tr. 186-87, 194). In August 2010, Dr. Richmond noted that Plaintiff would remain out of work because he was unable to perform the essential duties of his job (Tr. 193). Later that month, Dr. Richmond opined that Plaintiff was making good progress in restoring some elbow extension (Tr. 192). In November 2010, Plaintiff was unable to reach full flexion, and Dr. Richmond recommended continued physical therapy and dynamic splinting, and advised Plaintiff to remain out of work for two months (Tr. 230).

Plaintiff received physical therapy from July 2010 through November 2010. During his initial visit, Plaintiff reported that he was independent in his activities of daily living, including self-care and home/life skills (Tr. 221). Although Plaintiff complained of numbness in the fingers of his right hand, testing revealed normal results, including intact proprioception and stereognosis (Tr. 221). His

motor skills, prehension skills, handwriting, and gross motor skills were impaired in his upper right extremity (Tr. 221). His therapist opined that Plaintiff's rehabilitation potential was good, based on motivation and prior function (Tr. 222). A month later, Plaintiff experienced increased elbow flexion, but his grip strength was unchanged (Tr. 209).

Treatment notes from The Hand Center reveal that in September 2010, Timothy Dew, M.D., observed that Plaintiff's right elbow lacked approximately 20 to 30 degrees of full extension, but he could flex approximately 95 to 100 degrees (Tr. 227). Examination revealed pain with passive flexion, a rigid endpoint, mild tenderness over the medial and lateral epicondyles, positive elbow flexion test, cubital tunnel compression test, and mildly positive Tinel's and Phalen's tests (Tr. 227). However, Plaintiff exhibited strong grip strength and intact sensation, and a month later, he reported that his range of motion had improved with physical therapy, but that he still had constant pain in the elbow (Tr. 225, 227). In November 2010, Plaintiff complained of numbness and tingling in his right arm, with electrical shocks down his hand into his fingers (Tr. 224). Dr. Dew discussed conservative treatment as well as surgical options, and recommended a nerve conduction study (Tr. 224).

In a Function Report completed in November 2010, Plaintiff reported that he cared for his personal needs independently and without reminders, but with some pain (Tr. 135-36). He prepared meals; performed household chores, including cleaning, laundry, and ironing; went outside; drove a car; shopped in stores; paid bills; and watched television (Tr. 136-38). He could pay attention, follow spoken and written instructions, get along with authority figures, and handle stress and changes in routine (Tr. 139-40). In a pain questionnaire completed in November 2010, Plaintiff reported that he took no prescription medication for pain, and he attended physical therapy and wore

4

a splint to relieve his pain (Tr. 132).

In April 2011, Plaintiff reported that he felt much better since starting Celebrex, but Dr. Richmond observed no significant improvement in Plaintiff's range of motion (Tr. 248). His observations remained unchanged through March 2012 (Tr. 245-47).

In June 2012, Dr. Richmond observed decreased range of motion in Plaintiff's right elbow, and noted that he also complained of pain in his left calf muscle (Tr. 249). At Plaintiff's request, he completed a Medical Source Statement (Tr. 243). He listed Plaintiff's diagnoses as ankylosis of the right elbow and right elbow dislocation (Tr. 243). He described Plaintiff's symptoms as decreased range of motion, pain, and stiffness in his right elbow, and opined that he was unable to safely lift more than 20 pounds (Tr. 243). Dr. Richmond opined that Plaintiff required unscheduled breaks every one to two hours for three to four hours at a time, and he would be absent from work more than three times a month (Tr. 243-44). Finally, Dr. Richmond limited Plaintiff to lifting, pushing, or pulling no more than five pounds (Tr. 244).

State Agency physician Dale Van Slooton, M.D., reviewed the record and opined that Plaintiff could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand and/or walk for about six hours in an eight-hour day, sit for about six hours in an eight-hour day, and perform limited pushing and/or pulling with his upper extremities (Tr. 235). Plaintiff could occasionally crawl and climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; balance, stoop, kneel, and crouch; and engage in limited reaching in all directions (Tr. 236-37).

## C.     The Administrative Proceedings

### 1.     The Administrative Hearing

#### a.     Plaintiff's Testimony

5

Plaintiff testified that he previously worked at a hospital for 32 years, with his last assignment as a nurse's assistant (Tr. 46). He was able to drive 20 to 30 miles and carry five to six pounds, and pain medication relieved his symptoms for approximately three hours (Tr. 47, 49). His brother helped with most household chores, but he was able to put dishes in the dishwasher, sweep, dust, clean the bathroom, shop for groceries, and attend church (Tr.49-52).

**b.    Vocational Evidence**

At the hearing on June 26, 2012, Carroll H. Crawford, a vocational expert, testified. (Tr. 53-57). VE Carol Crawford testified in response to a series of hypothetical questions, one of which concerned an individual of Plaintiff's age and education who could perform medium work with additional limitations, including occasionally crawling and climbing ladders, ropes, scaffolds; frequently climbing, balancing, stooping, kneeling, crouching, and reaching with the upper right extremity; and never pushing or pulling with the upper right extremity (Tr. 55). The expert testified that the hypothetical individual could perform work that existed in significant numbers in the national economy, including the representative occupations of hand packager, order filler, and hospital cleaner (Tr. 56).

**2.    The ALJ's Decision**

In the decision of August 24, 2012, the ALJ found  the following:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.    The claimant has not engaged in substantial gainful activity since May 27, 2010, the alleged onset date    (20 CFR 404.1571).

3.    The claimant has the following severe impairments: right

6

elbow ankylosis status post fracture dislocation (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except I specifically find that the claimant can lift and carry up to 50 pounds occasionally and 25 pounds frequently. He can sit, stand, and walk for up to 6 hours, each, in an 8-hour workday. He can never push or pull with the right upper extremity. He can occasionally climb ropes, ladders, and scaffolds. He can occasionally crawl and an frequently climb ramps/stairs, balance, stoop, kneel, and crouch. He can frequently reach with the right upper extremity.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on May 12, 1958 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SST 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from May 27, 2010, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 25-35).

## II. DISCUSSION

The Plaintiff argues that the ALJ erred in his decision, and that reversal and remand are appropriate in this case. Specifically, Plaintiff raises the following issues in his brief, quoted verbatim:

I.    Did the ALJ err in providing limited weight to the opinion of Dr. W. Bruce Richmond, Patterson's treating orthopedist, regarding Patterson's experience of disabling pain from his right elbow injury?

II.   Is the new evidence submitted by the Plaintiff's treating physician new and material such as to warrant reversal and/or remand of the ALJ's decision so as to allow for the consideration of this evidence.

III.  Did the ALJ err by requiring objective medical evidence of the severity of Patterson's pain?

IV.   Should the Appeals Council have awarded benefits based on the testimony of the vocational expert documents that there is no work that Patterson can perform upon a proper consideration of all of Patterson's limitations?

V.    Did the ALJ err in failing to find that Patterson is disabled as directed by Medical-Vocational Rule 201.14?.

(Plaintiff's brief).

The Commissioner argues that the ALJ's decision is supported by substantial evidence. In response to Plaintiff's arguments the Commissioner asserts more specifically that (1) the ALJ weighed the medical source opinions with the record as a whole and reasonably discounted opinions that were unsubstantiated and inconsistent with other evidence; (2) the evidence submitted to the

8

Appeals Council after the ALJ's decision does not warrant remand; (3) substantial evidence supports the ALJ's finding that Plaintiff's complaints were not fully credible; (4) substantial evidence supports the ALJ's RFC finding and corresponding hypothetical question to the vocational expert; and (5) the ALJ's conclusion that there were medium jobs that existed in significant numbers in the national economy that Plaintiff could perform is supported by vocational expert testimony and is based upon a correct application of the law.

## A.     LEGAL FRAMEWORK

### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. See, e.g., Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or

9

equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d) (5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy

---

[2]The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); see Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3]In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir.2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir.1981); see generally Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. See id.; Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Walls, 296 F.3d at 290 (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." Vitek v. Finch, 438 F.2d 1157, 1157–58 (4th Cir.1971); see Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir.1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390, 401; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir.2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. See Vitek, 438 F.2d

at 1157–58; see also Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972).

## B.     ANALYSIS

The first issue raised by Plaintiff is the ALJ's evaluation of the opinion evidence of treating physician Dr. Richmond.  The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R. §§ 404.1508 and § 404.1527(c)(2). The medical opinion of a treating physician is entitled to controlling weight, i.e. it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ must apply all of the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the

claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. See SSR 96-2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006).

The ALJ's discussion of his evaluation of Dr. Richmond's opinion reads as follows:

As for the opinion evidence, the claimant's treating physician, Dr. Richmond, provided an opinion in several of his treatment records that the claimant would be unable to return to his past relevant work (Exhibits 11F, 12F). Dr. Richmond also provided a June 2012 medical source statement where he opined that the claimant would experience interferences to his attention and concentration after one hour of using his right upper extremity (Exhibit 10F, Page 1). He also opined that the claimant is unable to safely lift over 20 pounds and would need unscheduled breaks every 1-2 hours for 3-4 hours before returning to work (Id.). He opined that the claimant would be absent from work due to his impairments more than three times per month and could not lift, push, or pull more than 5 pounds (Id. at Page 2).

I give limited weight to the opinion of Dr. Richmond. While I agree the claimant's right upper extremity requires limitations (which I have found in his residual functional capacity) that would preclude returning to his past relevant work, I do not find that he is as severely limited in his ability to lift and carry. Dr. Richmond's own physical examinations do not show the severe limitations he has found in his medical source statement. As previously discussed, his examinations revealed some decreased range of motion, stiffness, and pain in the right upper extremity (Exhibits 2F; 5F; 9F 11F; 12 F). However, there is nothing in these records that shows the claimant would be limited to only lifting, pushing, and pulling 5 pounds, especially with his left upper extremity, which has no problems.

Dr. Richmond also opined Mr. Patterson would require unscheduled breaks, need to rest every three or four hours and would miss more than three times per month. I conclude these opinions are speculative. First, Dr. Richmond articulates no rationale to support his speculation that the claimant would miss three days per month need rest every three or four hours or require unscheduled breaks. Second in reaching my determination that these opinions are speculative I note that throughout Dr. Richmond's records he indicates Celebrex helps but does not completely resolve pain (exhibits 11F and 12F). Moreover, Dr. Richmond repeatedly reported no tenderness on palpation and noted moderate pain at the terminus of both flexion and extension (Exhibits 2F, 5F, and 11F). Based on his notes I conclude that pain is not the predicate to support these opinions. Third, claimant's activities of daily living indicate functional ability inconsistent with Dr. Richmond's opinion. Mr. Patterson testified that he does limited dishes and sweeping. In addition, he cooks, does laundry, takes the trash out, dusts, cleans the bathroom, drives, attends church, visits, shops, and goes out to get something to eat. Claimant reported in his functional report that he does cleaning, laundry, ironing, driving, shopping, pays bills, and that he is good in handling stress and is very good in following written and spoken instructions (Exhibit 4E).

(Tr. 31).

After review and consideration, the undersigned concludes that the ALJ properly considered and discussed Dr. Richmond's opinions.  As an initial matter, with regards to any opinion by Dr. Richmond that the Plaintiff's is unable able to work, is disabled, or can perform at a certain residual functional capacity level, the Court notes that determinations of disability are ultimately an issue reserved to the Commissioner. (Tr. 543). More fully, pursuant to SSR 96-5p, available at 1996 WL 374183, at *2, "treating source opinions on issues that are reserved to the Commissioner are never entitled to . . . special significance. Giving controlling weight to such opinions . . . would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled" (emphasis added). That said,  opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record. Id. at *3. The ALJ in this case complied with this obligation with respect to Dr. Richmond's opinions.

Additionally, here, the ALJ explained that Dr. Richmond's opinion was not fully consistent with his own progress notes (Tr. 31). Although Dr. Richmond's notes discuss some decreased range of motion, stiffness, and pain in Plaintiff's upper right extremity, they did not reveal the severe limitations Dr. Richmond proffered in his medical source statement (Tr. 31). The record shows, for

instance, that Plaintiff retained full pronation and supination in the upper right extremity, he did not exhibit swelling or tenderness to palpation, he was intact neurovascularly, his skin temperature was normal, there was no evidence of erythema, and his symptoms improved with medication (Tr. 191-93, 242, 249). The ALJ also correctly noted that Dr. Richmond's opinion that Plaintiff would require unscheduled breaks and would miss more than three days of work a month was unsupported by the evidence (Tr. 31). Finally, the ALJ noted that Plaintiff's activities were inconsistent with Dr. Richmond's extreme opinion (Tr. 31). Plaintiff retained the ability to care for his personal needs, perform household chores, prepare meals, drive, attend church, and shop in stores, among other activities (Tr. 31). These were all appropriate factors for the ALJ to consider when determining whether to give Dr. Richmond's opinion significant weight. 20 C.F.R. §§ 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."), 404.1527(c)(4), (stating an ALJ must consider opinion's consistency with other evidence); Montgomery v. Chater, 107 F.3d 866 (Table), 1997 WL 76937, at * 1 (4th Cir. 1997) (unpublished) (ALJ's finding that treating physician's opinion was not persuasive upheld, in part, because his opinion was unsupported by contemporaneous treatment records).

Plaintiff next contends that it was improper for the ALJ to give great weight to the opinion of Dr. Van Slooten, who opined that Plaintiff could perform medium work with additional limitations (Tr. 32). The ALJ discusses Dr. Slooten's opinion as follows:

> Dale Van Slooten, M.D. provided a physical residual functional capacity assessment in April 2011 (Exhibit 8F). He found the claimant would be capable of less than the full range of medium work with additional limitations on his ability to push and pull with the right upper extremity as well as postural and manipulative limitations for his right upper extremity (Id. at Pages 2-4). I give great weight to Dr. Van Slooten's opinion. The physical examinations

15

from The Hand Center and Dr. Richmond do show the claimant has right upper extremity limitations, which Dr. Van Slooten found and I have accounted for in the residual functional capacity I have found (Exhibits 2F; 3F; 5 F; 9F; 11 F; 12 F). Dr. Van Slooten articulated a rationale in support of his opinion, which is consistent with diagnostic tests and findings on physical examination (Exhibit 8F2 and 6). Further, I note activities of daily living that have been set forth throughout this section illustrate functional abilities consistent with this opinion.

(Tr. 32).

State agency consultants are "highly qualified" medical professionals and "experts in the evaluation of medical issues in disability claims under the Act." 20 C.F.R. § 404.157(e)(2)(I). The opinions of state agency physicians are entitled to consideration under the same regulations used to assess other medical opinions. Id. Where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). As the opinion of Dr. Van Slooten is supported by the evidence and was not inconsistent with other substantial evidence of record, the Commissioner properly afforded it substantial weight. After careful review and consideration, the Court finds that the ALJ appropriately considered and evaluated all of the opinion evidence of record and his findings are supported by substantial evidence as outlined herein.

Plaintiff also asserts that the ALJ improperly evaluated his credibility and that the ALJ required objective medical evidence of his pain. At the outset, the Court notes that the ALJ specifically indicates that:

I have not required the presence of objective medical evidence in determining the intensity and persistence of the pain and other symptoms alleged. Rather, I have specifically considered the nature, location, onset, duration, frequency, radiation, and intensity of any symptoms, including pain; the precipitating and aggravating factors; the type, dosage

16

effectiveness, and adverse side effects of any medication, the treatment, other than medication, for relief of pain or other symptoms; the alleged functional restrictions and the claimant's activities of daily living, as required by 20 CFR sections 404.1529 and 416.929, SSR 96-7p, *Mickles v. Shalala*, 29 F.3d 918, 9191 (4th Cir. 1994) and *Craig v Chater*, 76 F.3d 585 , 591 (4th Cir. 1996). In engaging in such a determination, I have specifically considered that a claimant "need only show objective medical evidence of some condition that could reasonably be expected to produce the pain alleged, not objective medical evidence of the pain itself" (remaining citations omitted).

(Tr. 29)

The ALJ considered and evaluated Plaintiff's subjective complaints, but did not find them to be fully credible. The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985).

It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision. SSR 96–7p.

Under Craig v. Chater, 76 F.3d 585, 591–96 (4th Cir.1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the

presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96–7p.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir.1989) ( quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.

Here, the ALJ accepted that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms, but cited both objective and subjective evidence detracting from Plaintiff's statements regarding the extent of his limitations. (Tr. 30).  The ALJ indicated that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 30).

Regarding the Plaintiff's credibility, the ALJ made these findings:

18

In terms of the claimant's alleged right upper extremity problems, I recognize that he sustained a fall in May 2010 where he was complaining of pain radiating to the forearm, wrist, and hand in the right upper extremity (Exhibit 1F, Page 1) Physical examination revealed pain in the arm and elbow with positive pulses but no altered sensation. A CT of the elbow revealed an extensive fracture of the elbow, which resulted in a diagnosis of a fractured radial head of the elbow (Id. at Pages 2-3, 8). The claimant has consistently received treatment from Dr. Richmond at Blue Ridge Orthopedic since his injury occurred (Exhibits 2F; 5 F; 9F 11 F; 12 F). Dr. Richmond's physical examinations have consistently shown that the claimant has some reduced range of motion, stiffness, and pain the right upper extremity. His diagnoses have remained unchanged and been listed as right elbow dislocation and ankylosis (Id.). A November 2010 examination from The Hand Center included an x-ray that revealed a continued large coronoid fragment (Exhibit 3F, Page 1). While these findings indicate an impairment that is likely to cause some pain claimant's testimony regarding the intensity and severity is not consistent with these physical findings and reports by his physicians. For example, Mr. Patterson stated [his] pain was 9/10 with 10 necessitating hospitalization because of the pain. Mr. Patterson's report[ed] pain is inconsistent with what he reported [to] other treating sources. Dr. Richmond reported no tenderness on September 30, 2010 (Exhibit 2F). On January 4, 2011 pain was reported as mild (Exhibit 5F). Dr. Richmond on other occasions reported no tenderness to palpation (Exhibit 2F1, 2, 5 and 6, and 11F4). Again, claimant experiences pain, however, Dr. Richmond noted that he has moderate pain at the terminus of both flexion and extension (Exhibit 11F). Mr. Patterson's testimony is inconsistent with what his physician reports, which detracts from his credibility.

Mr. Patterson opens a credibility gap with respect to his testimony regarding an inability to walk for more than 15 minutes or lift 5 pounds. There is no evidence to suggest any impairment that would limit walking. Mr. Patterson has no impairment or limitation of his left upper extremity that would limit lifting. No doubt lifting with the right upper extremity is limited, however, diagnostic tests and physical exams [a]s set forth herein failed to disclose a limitation that would restrict lifting to 5 pounds. This is illustrated by the claimant's activities of daily living. He reported that he is able to do cleaning, laundry, shopping and ironing. (Exhibit 4E). While he testified he can only lift 5 pounds he reported that he could not lift more than 20 pounds with his right arm in his functional report (Exhibit 4E6). Overall, while I recognize that Mr. Patterson has a severe impairment of the right elbow I find his contention unsupported by the evidence. The inconsistencies set forth persuade me that his representations about limitations is overstated.

(Tr. p. 30-31).

In light of the above, the undersigned concludes that the ALJ considered both objective and subjective evidence in making his credibility determination. Additionally, the ALJ's consideration indicates that he adequately considered how Plaintiff's impairments affected his routine. Courts have found that

evidence of similar levels of activity tends to weigh against a finding of disability. See Johnson, 434 F.3d at 658 (ALJ properly found claimant's description of "excruciating" pain inconsistent with her testimony that she cooked, cleaned the house, read, watched television, visited relatives, and attended church twice weekly); accord Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); Gross, 785 F.2d at 1166. Because the record contains substantial evidence supporting the ALJ's conclusion about Plaintiff's limitations, the ALJ's credibility determinations are entitled to deference.

The Court also notes that the appropriate consideration of the medical opinions in the case, and the appropriate evaluation of Plaintiff's subjective complaints as discussed above is also relevant to the Court's conclusion that substantial evidence supports the ALJ's assessment of Plaintiff's RFC. An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In making that assessment, she must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184, at *2. It is the claimant's burden, however, to establish how her impairments impact her functioning. *See* 20 C.F.R. §§ 404.1512(c), 416.946(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Maj. J. Mem. & Rec.) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2012), *aff'd*, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

In the instant case, substantial evidence supports the ALJ's assessment of Plaintiff's RFC. The record in this case reflects a routine and conservative treatment history. Plaintiff did not require

invasive or intensive treatment for his right elbow ankylosis status post fracture dislocation. To the contrary, he merely attended routine visits with his orthopedist, attended physical therapy, and took medication, which he reported caused some relief of his pain (Tr. 192-98, 209, 221-22, 224-27, 230, 245-49).  Additionally, the treatment records of the physical findings support the decision of the ALJ. Shortly after Plaintiff's injury, Dr. Richmond diagnosed a stable right elbow dislocation and opined that Plaintiff's condition was improving (Tr. 197). He observed less tenderness and increased range of motion with full pronation and supination, and opined that Plaintiff was neurovascularly intact distally (Tr. 197). Shortly thereafter, Dr. Richmond observed no tenderness on palpation of Plaintiff's right elbow (Tr. 196). In July 2010, Dr. Richmond noted that Plaintiff was not in significant pain (Tr. 195). In August 2010, Dr. Richmond opined that Plaintiff was making good progress in restoring some extension of his elbow (Tr. 192). The opinion of Dr. Van Slooten, the state agency physician who concluded that Plaintiff was capable of working based on an independent record review, also supported the ALJ's RFC. Dr. Van Slooten opined that Plaintiff could perform a limited range of medium work (Tr. 235-41).  Finally, Plaintiff's self-reported activities and abilities supports the RFC. Plaintiff cared for his personal needs; performed household chores; prepared meals; attended church; walked; drove; and shopped in stores (Tr. 29). The above evidence, which the ALJ discussed throughout the decision, supports the RFC formulated by the ALJ and his conclusion that Plaintiff could perform medium work with additional limitations, including never pushing or pulling with the upper right extremity; occasionally crawling and climbing ropes, ladders, and scaffolds; and frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and reaching with the upper right extremity (Tr. 28-33).

When presented with a hypothetical including these limitations, the VE in this case testified

that a person with Plaintiff's background and those limitations could perform work that existed in substantial numbers in the national economy, including the representative occupations of hand packager, order filler, and hospital cleaner (Tr. 56). The VE's testimony is further substantial evidence to support the ALJ's step five finding. See Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985) (stating that an ALJ may rely upon a vocational expert to find that Plaintiff can perform a significant number of other jobs in the national economy).

Plaintiff argues that additional restrictions should have been included in the RFC assessment and hypothetical question to the VE. (Pl.'s Br. at 14-15). Specifically, Plaintiff argues that the ALJ should have included limitations related to Plaintiff's subjective allegations of pain as included in Dr. Richmond's restrictive June 2012 assessment (Pl.'s Br. at 14-16). This argument is not persuasive. It is Plaintiff's burden to establish that he had limitations beyond those that the ALJ included in the RFC finding. Plaintiff cannot sustain that burden. As discussed, supra, above, the ALJ gave limited weight to Dr. Richmond's opinion and as discussed the ALJ did not entirely accept Plaintiff's subjective complaints (Tr. 28, 30-31). Thus, the ALJ was not obligated to include such limitations. See Mickles v. Shalala, 29 F.3d 918, 928 fn. 7 (4th Cir. 1994) (although the vocational expert testified when examined by Mickles' attorney that Mickles could not hold a job if her functional capacity were restricted by pain to the extent she alleged, [ ] the ALJ found those allegations to be incredible. As that finding was supported by substantial evidence, so too was his finding that Mickles was capable of performing work and was therefore not disabled).

Although Plaintiff argues additional limitations should have been included in his RFC, the ALJ's credibility analysis, assessment of limitations in formulating Plaintiff's RFC, and hypothetical question to the VE, were all supported by substantial evidence; therefore, the ALJ committed no error

22

when he did not include additional limitations.

Plaintiff also argues that the additional evidence he submitted to the Appeals Council is new and material and should be weighed by a factfinder. (Doc. # 16 at 10). In response, the Commissioner asserts that the Plaintiff has failed to demonstrate that the evidence he submitted to the Appeals Council is "new" or "material." The additional evidence submitted to the Appeals Council includes a May 2012 physical ability assessment completed by Dr. Richmond.   (Tr. 252-53).  Dr. Richmond diagnosed Plaintiff with a stable right elbow dislocation and ankylosis of the right elbow, and opined that he could occasionally reach, lift, and carry up to ten pounds; push or pull a maximum of five pounds; climb ladders; perform fine manipulation, simple grasping, and firm grasping with his right hand; and frequently perform fine manipulation, simple grasping, and firm grasping with his left hand (Tr. 252-53). Finally, Dr. Richmond opined that Plaintiff was unable to return to his job as nursing assistant (Tr. 253).

A claimant may offer relevant evidence to support his or her disability claim throughout the administrative process. Even after the Administrative Law Judge (ALJ) renders a decision, a claimant who has sought review from the Appeals Council may submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. §§ 404.968, 404.970(b). Id.   Under 20 C.F.R. § 404.970(b), the Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc). In order to be "new" evidence, the evidence must not be "duplicative or cumulative," and in order to be "material," there must be a "reasonable possibility that it would have changed the

outcome." Id. at 96. After evaluating the record, including any new and material evidence, the Appeals Council "will then review the case if it finds the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b) (emphasis in original). The evidence offered to the Appeals Council is made part of the record.

The Social Security Regulations do not require the Appeals Council expressly to weigh the newly produced evidence and reconcile it with previously produced conflicting evidence before the ALJ. Instead, the regulations require only that the Appeals Council make a decision whether to review the case, and, if it chooses not to grant review, there is no express requirement that the Appeals Council weigh and reconcile the newly produced evidence. Meyer v. Astrue, 662 F.3d 700. 705-706 (4th Cir. 2011).

As the Fourth Circuit recently addressed in Meyer, the difficulty arises under this regulatory scheme on review by the courts where the newly produced evidence is made part of the record for purposes of substantial evidence review but the evidence has not been weighed by the fact finder or reconciled with other relevant evidence. Meyer held that as long as the newly presented evidence is uncontroverted in the record or all the evidence is "one-sided," a reviewing court has no difficulty determining whether there is substantial evidence to support the Commissioner's decision. Id. at 707. However, where the "other record evidence credited by the ALJ conflicts with the new evidence," there is a need to remand the matter to the fact finder to "reconcile that [new] evidence with the conflicting and supporting evidence in the record." Id. Remand is necessary because "[a]ssessing the probative value of the competing evidence is quintessentially the role of the fact finder."

In its November 21, 2013 notice denying Plaintiff's request for review, the Appeals Council stated that it considered the additional evidence provided by Plaintiff in rendering its decision. Tr. 5.

The Appeals Council found the information did "not provide a basis for changing the [ALJ's] decision." Tr. 6.

Plaintiff argues that under Meyer, the court must remand Plaintiff's case because Plaintiff has submitted material evidence that has not been weighed by the ALJ or the Appeals Council. ECF No. 33 at 6. Meyer, however, does not require an automatic remand for unreviewed material evidence, but instead finds that remand is appropriate when the court cannot determine, from review of the record as a whole, if substantial evidence supports the denial of Plaintiff's application for benefits. Meyer, 662 F. 3d. at 702.

The undersigned has considered the additional evidence referenced by Plaintiff - the May 2012 physical ability assessment completed by Dr. Richmond- in determining whether the ALJ's decision was supported by substantial evidence. As noted above, the record before the ALJ included substantial evidence necessary to support his finding. The evidence presented to the Appeals Council could not change the result. Plaintiff argues that Dr. Richmond "spells out that the Plaintiff cannot pull, push, or lift more than five pounds" in contradiction to the ALJ's finding that "there is nothing in these records that show the Plaintiff would be limited to only lifting, pushing, and pulling 5 pounds"[4] Tr. 31.  In reviewing the ALJ's decision as a whole, and the evidence submitted to the

_____

[4]This statement relied on by Plaintiff in its entirety reads: "However, there is nothing in these records that show the Plaintiff would be limited to only lifting, pushing, and pulling 5 pounds, especially with his left upper extremity, which has no problems. Additionally, in discussing Plaintiff's credibility, the ALJ elaborates on this issue as follows:

> Mr. Patterson opens a credibility gap with respect to his testimony regarding an inability to walk for more than 15 minutes or lift 5 pounds.  There is no evidence to suggest any impairment that would limit walking.  Mr. Patterson has no impairment or limitation of his left upper extremity that would limit lifting.  No doubt lifting with the right upper extremity is limited, however, diagnostic tests and physical exams [a]s set forth herein failed to disclose a limitation that would restrict lifting to 5 pounds.  (Tr. 30).

25

Appeal's Council, the Court is not persuaded by Plaintiff's position.

As an initial matter, the May 2012 Physical Ability Assessment prepared by Dr. Richmond is not "new" evidence because it merely contains duplicative and cumulative evidence regarding Plaintiff's diagnosis and Dr. Richmond's opinion of the limitations caused by that diagnosis, including limitations on reaching, manipulation, grasping, lifting, carrying, pushing, and pulling with Plaintiff's upper right extremity (Tr. 243-44, 252-53).

The additional evidence submitted to the Appeals Council is also not material as it would not change the outcome of the ALJ's decision. The evidence before the ALJ included a June 2012 medical source statement completed by Dr. Richmond at Plaintiff's request. Dr. Richmond diagnosed ankylosis of Plaintiff's right elbow and right elbow dislocation (Tr. 243). He noted that Plaintiff experienced decreased range of motion, pain, and stiffness in his right elbow, and opined that Plaintiff was limited to lifting, pushing or pulling no more than five pounds (Tr. 244). Thus in fact, this evidence was before the ALJ who cited it in his decision. The ALJ, however, did not find this evidence credible. He in turn indicated the evidence did not support Dr. Richmond's findings. Additionally, the more recent evidence already before the ALJ included a more restrictive opinion than that submitted to the Appeal's Council, as Dr. Richmond opined that Plaintiff required unscheduled breaks every one to two hours for three to four hours at a time, and he would be absent from work more than three times a month (Tr. 243-44). Moreover, Dr. Richmond completed this form a month after he prepared the evidence at issue. Accordingly, the additional evidence does not warrant remand because it is neither new nor material. The Court determines that under Meyer, the evidence is all "one-sided" such that the Court is able to determine whether substantial evidence supports the Commissioner's decision. After full consideration of the additional evidence, the Court concludes

that the ALJ's decision is supported by substantial evidence in the record and there is no basis for remand to the Commissioner.

Finally, Plaintiff argues that the ALJ improperly found that he could perform medium jobs, but instead should have relied on Rule 201.14[5] of the Medical-Vocational Guidelines (Grids),[6] which considers work in the "sedentary" residual functional capacity range, to determine that he was disabled. In this case, the ALJ found that Plaintiff had the capacity to perform a limited range of medium work, as described above. Plaintiff erroneously contends that the ALJ's RFC finding was in error and the ALJ should have found him disabled under the lower exertional grid rules.

SSR 83-14 provides that an ALJ is directed to use the Grids as a framework and to call upon a VE in more complex cases when the claimant, as in this case, has a combination of both exertional and non-exertional limitations, and a finding of disability cannot be found based on the strength limitations alone. *See* SSR 83-14, 1983 WL 31254, at * 4. The ALJ complied with the applicable

---

[5]Rule 201.14 directs a finding of "disabled" for an individual who is closely approaching advanced age (age 50-54), is a high school graduate or more, has previous skilled or semi-skilled work experience with no transferable skills, and has the residual functional capacity to perform a full range of sedentary work. 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.14.

[6]The Grids contain numbered tabled rules which direct conclusions of "disabled" or "not disabled" based upon a claimant's vocational factors (age, education, and work experience) in combination with a specific residual functional capacity (sedentary, light, medium, heavy, or very heavy work). 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a). The Grids are, however, limited in applicability and do not cover all possible variation of factors, i.e., when a claimant's exertional residual functional capacity does not specifically coincide with any one of the defined exertional ranges of work or when a claimant has solely nonexertional limitations or a combination of exertional and nonexertional limitations. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 200.00(d), (e). In cases where a claimant's residual functional capacity is not listed in the Grids, the Grids are used as guidance for decision-making and are not directly applied. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(d); *see also* SSR 83-12, 1983 WL 31253 (clarifying how the Grids are to be used as a framework for adjudicating claims where an individual's residual functional capacity falls between ranges of work).

guidelines in this case. The ALJ found that Rule 203.22 directed a finding of not disabled (Tr. 34). However, because Plaintiff's limitations did not allow him to perform a full range of medium work,[7] the ALJ instead properly determined that strict application of the grid rules was not possible and appropriately relied on VE testimony (Tr. 34). As the ALJ accounted for all of Plaintiff's functional limitations that were supported by the record and appropriately relied on VE testimony that Plaintiff could perform the medium occupations that existed in significant numbers in the national economy, the Court finds no error.  (Tr. 34, 56).

### III.  CONCLUSION

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of

---

[7]A full range of medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). A full range of medium work also requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday, with sitting occurring intermittently during the remaining time. See SSR 83-10, 1983 WL 31251, at *5-6.

Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c)

(3), it is, **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 16, 2015
Florence, South Carolina